# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **FREDERICK LYNN BORN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 3:14-cv-01946** |
| **v.** | ) | |
| | ) | **Judge Trauger** |
| **NANCY BERRYHILL,**[1] | ) | **Magistrate Judge Frensley** |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Before the court is plaintiff Frederick Lynn Born's Motion for Judgment on the Administrative Record ("Motion") (Docket No. 13), filed with a Memorandum in Support (Docket No. 14). Defendant Commissioner of Social Security ("Commissioner") filed a Response in Opposition to plaintiff's Motion. (Docket No. 15.) On January 13, 2017, this case was referred to a magistrate judge. (Docket No. 17.)

To avoid further delay in the resolution of this matter, the court will vacate that referral. Upon consideration of the parties' filings and the transcript of the administrative record (Docket No. 11),[2] and for the reasons given below, the court will grant the plaintiff's Motion (Docket No. 13) to the extent that the case will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum.

## I.     Introduction

Born filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and for Supplemental Security Income ("SSI") under Title XVI of the Act on

---

[1] Nancy Berryhill became Acting Commissioner of Social Security on January 23, 2017.

[2] Referenced hereinafter by page number(s) following the abbreviation "Tr."

February 2, 2012, alleging a disability onset date of December 31, 2010. (Tr. 26.) Born's claim was denied at the initial and reconsideration stages of state agency review. Born subsequently requested *de novo* review of his case by an Administrative Law Judge ("ALJ"). The ALJ conducted a hearing on December 3, 2013, at which Born appeared with a non-attorney representative and gave testimony. (Tr. 43–76.) An impartial vocational expert ("VE") also testified. At the conclusion of the hearing, the matter was taken under advisement until March 26, 2014, when the ALJ issued a written decision finding Born not disabled. (Tr. 26–36.) That decision contains the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2013.

2. The claimant has not engaged in substantial gainful activity since December 31, 2010, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: cervical and lumbar spine degenerative disc disease, sleep apnea, and restless leg syndrome (20 C.F.R. 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except that the claimant can lift and/or carry 20 pounds; stand and/or walk 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; frequently climb ramp/stairs, balance, stoop, kneel, crouch, and crawl; and occasionally climb ladder/rope/scaffolds.

6. The claimant is capable of performing past relevant work as an information technology consultant and supervisor. This does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. 404.1565 and 416.965).

7. The claimant has not been under a "disability" as defined in the Social Security Act, from December 31, 2010, through the date of this decision (20 C.F.R. 404.1520(f) and 416.920(f)).

(Tr. 28, 30, 36.)

On August 6, 2014, the Appeals Council denied Born's request for review of the ALJ's decision (Tr. 4–8), thereby rendering that decision the final decision of the Social Security Administration ("SSA"). This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. § 405(g).

## II.     Review of the Record

The ALJ summarized the medical records pertaining to Born's physical impairments as follows:

> The claimant has a history of lower back pain and imaging studies from July 2006 showed degenerative disc disease at L5-S1 with posterior disc bulge and mild posterior disc bulge at L4-5. Lumbar spine x-rays performed on May 17, 2011 revealed degenerative changes at L4-5 and L5-S1. Exhibits 3F and 5F.
>
> On August 9, 2011, the claimant established care with Dr. Vern Bain and complained of chronic pain[,] anxiety and sleep problems. The claimant reported pain in his neck and pain in his low back radiating into his left leg. He stated he was unable to sleep at night due to panic attacks. Physical examination was unremarkable with good pulses, normal range of motion, and no edema. Dr. Bain prescribed Celexa, Flexeril, Lortab, and Xanax. Medications were renewed on September 23, 2011. On October 21, 2011, the claimant complained of pain in his upper back. Lortab was refilled. Exhibit 10F.
>
> A physical therapy evaluation was performed on December 5, 2011, upon the request of Dr. Bain, due to the claimant's complaints of pain in his neck and lower back. Physical therapy sessions were recommended two times per week for four weeks. The claimant was discharged on January 11, 2012 with instructions to continue home exercise program. The claimant indicated overall functional improvement of twenty percent since initiating physical therapy. Exhibit 7F.
>
> William Huffman, M.D., performed a consultative physical examination for the Social Security Administration on March 29, 2012. The claimant reported degenerative disc disease since 2006, with neck and back pain and intermittent numbness in his legs. He also reported bilateral shoulder pain and bilateral knee pain since 2009 and a sleep disorder diagnosed in 2011. He denied surgery on his neck, back, shoulders, and knees. Current medications included Lisinopril, Fluoxetine, Hydrocodone, and Clonazepam. He stated he and his wife were separated and he lived with his children and sister. The claimant was five feet eight inches tall and weighed 243 pounds with blood pressure of 120/80. He was

well developed, alert, cooperative, and in no acute distress. Examination of his cervical spine revealed normal range of motion with pain on range of motion of his neck. His lungs were clear to auscultation and percussion and his heart had regular rate and rhythm. His dorsolumbar spine had 90 degrees flexion, 25 degrees extension, 25 degrees right lateral flexion, and 25 degrees left lateral flexion with pain on palpation and range of motion in the lumbosacral paravertebral region of his back. His shoulders had normal range of motion with pain on range of motion of both shoulders. He had normal range of motion of his wrists, elbows, hips, and ankles without pain. His knees had 130 degrees flexion bilaterally, 0 degrees extension bilaterally with mild pain on palpation in range of motion of his knees and no effusions, no increased heart rate, erythema, or edema. His gait and station were normal. Cranial nerves were intact. Motor strength was 5/5 in his upper and lower extremities bilaterally. Romberg was negative. He had normal heel-to-toe walking and was able to stand on his heels and his toes without difficulty. He was able to stand on his right leg alone and on his left leg alone without difficulty. Deep tendon reflexes were 2+ and equal bilaterally. Straight leg raising tests were negative bilaterally. He had no neurosensory deficits. Exhibit 9F.

Dr. Bain referred the claimant to Dr. Roxanne Valentino, a neurologist, on May 3, 2012, for evaluation of the claimant's back pain and weakness and intermittent tingling in his left arm and leg. Examination of his neck revealed decreased left rotation and his back revealed paraspinal tenderness to palpation. Straight leg raising test was normal bilaterally. Motor strength was normal except for give-away weakness in his left hamstring that normalized with repeated testing. Sensation was normal in his legs. His gait was narrow-based and steady with normal arm swing. Tandem gait was performed independently. Romberg was negative. Dr. Valentino noted the exam was most suggestive of fibromyalgia, which she noted many positive fibromyalgia tender points. However, Dr. Valentino did not specify the fibromyalgia tender points. In addition, Dr. Valentino assessed the claimant with degenerative disc disease, but noted the examination revealed no evidence for myelopathy or radiculopathy. Also Dr. Valentino indicated the claimant has a skin sensation disturbance, restless leg syndrome, and lumbago. Dr. Valentino prescribed Gabapentin to treat fibromyalgia, skin sensation disturbance, and restless leg syndrome. Exhibit 11F.

The claimant complained of snoring, dry mouth in the morning, and excessive daytime sleepiness. A sleep study was performed on January 16, 2012; however, the claimant did not sleep. A subsequent sleep study was performed on August 3, 2012, revealed mild rapid eye movement (REM) predominant obstructive sleep apnea with severe associated hypoxia. Excessive periodic limb movement was noted during the study and a clinical assessment for restless leg syndrome was recommended. A Polysomnogram for CPAP titration was performed and an adjustment to CPAP titration was done on October 2, 2012. Exhibits 17F and 24F.

A cervical spine MRI performed on September 27, 2012, showed lower cervical

and upper thoracic degenerative changes. Lumbar spine MRI revealed lower lumbar degenerative disc changes most prominent at L5-S1. Exhibit 25F.

Patrick Stansbury, PA-C, with Neurosurgical Associates, conducted a consultation on January 11, 2013, upon the referral of Dr. Bain due to left arm radiculopathy and left subscapular pain. The claimant stated his pain was constant throughout the day and kept him up at night. He also stated the pain radiated down the posterior portion of his left arm and into the fourth and fifth fingers of his left hand. Examination of his neck revealed full range of motion with no cervical lymphadenopathy. He had full range of motion without pain in his legs bilaterally with normal motor strength and intact sensation. His bilateral upper extremities revealed normal motor strength, intact sensation, and full range of motion with negative Tinel's signs at the elbows and wrists bilaterally. Mr. Stansbury noted the claimant's cervical spine MRI showed a small osteophyte at the level of C5-6 on the left that could be effacing the left C6 nerve and indicated he still had a C6-7 on the right mild neural foraminal stenosis from the disc osteophyte formation. Mr. Stansbury's recommended EMG/nerve conduction study and cervical steroid injection at C5-6. Exhibit 18F.

The claimant was referred to Dr. Megan Mason for EMG/nerve conduction of his bilateral upper extremities on April 29, 2013. The results of the study were normal with no evidence of acute cervical radiculopathy, brachial plexopathy, focal mononeuropathy, or myopathy. Exhibits 19F and 20F.

The claimant presented to Dr. Phillip Beaulieu on June 18, 2013, for initial evaluation and treatment options regarding persistent neck and low back pain. The claimant stated his pain worsened with prolonged sitting, walking, and bending and improved with lying, occasional walking, positional changes, and medication therapy. He stated his pain ranged from an 8/10 to a 4/10 on current medication regime. He denied any side effects from the regimen and did not feel he had any problems with his medications. Examination revealed normal alignment/curvature of his cervical, thoracic, and lumbar spine without masses and range of motion of his upper and lower extremities was intact. There was diffuse tenderness to palpation of cervical paraspinal and trapezius muscles with taut muscle bands and limited range of motion with flexion, extension and lateral flexion. Thoracic spine was normal. Lumbar spine had normal flexion with pain in full flexion, limited extension with lateral flexion and tenderness to palpation at L5-S1. Dr. Beaulieu prescribed Methocarbamol and continued Lortab. Dr. Beaulieu administered an L5-S1 epidural steroid injection on July 19, 2013. The claimant returned on August 14, 2013, and reported greater than 70 percent reduction in his pain after the injection but his pain relief slowly dissipated. He complained of some numbness in his feet with mild motor weakness, which was much better after the injection. Dr. Beaulieu administered a second lumbar epidural steroid injection on October 28, 2013. The claimant stated on November 20, 2013, the injection provided only short-term pain relief and his symptoms resumed back to baseline. Exhibit 23F.

Dr. Bain performed a yearly physical examination on August 15, 2013. The claimant was well developed, well nourished, pleasant, cooperative, and did not appear acutely ill. No cervical spine limitation of motion was noted. His lungs were clear to auscultation. His heart had regular rate and rhythm. Peripheral pulses were normal. No active arthritis or joint deformity was noted. Cranial nerves were intact. Deep tendon reflexes were 2/4 in all extremities without asymmetry. No Babinski, Hoffman, or cortical release sings [sic] were noted. Sensory examination was normal. Motor strength was 5/5 bilaterally. The arm over arm roll testing was normal. Romberg was negative. Dr. Bain refilled his medications. Exhibit 25F.

(Tr. 31–33.)

The ALJ summarized the medical record documenting Born's mental impairments as follows:

The claimant also alleged disability due to depression and anxiety. The evidence reflects the claimant received medications from his primary care physician, [Dr. Bain,] which is routine and conservative treatment, and he received outpatient mental health treatment from the Volunteer Behavioral Health Care System from April through September 2013. However, these records reflect claimant was self-sufficient and able to care for his children with situational stressors involving issues with finances, housing, and transportation. Mental status examinations were unremarkable. Exhibit 22F.

Marie La Vasque, M.S., and Susan Vaught, Ph.D., conducted a consultative psychological evaluation for the Social Security Administration on March 20, 2012. The claimant arrived to the evaluation via public transportation. His posture was erect and gait was normal. The claimant reported medical issues including degenerative disc disease, sleep disorders, ringing in the ears, and pinched nerves affecting his shoulders and knees. Personal history of substance abuse was positive for heavy drinking when he was younger and blackouts were denied. However, he was charged with driving while intoxicated in the 1990's. He stated he was treated for bipolar disorder in the mid-1990's and was currently prescribed medication for depression by his primary care physician. He also stated he was prescribed medication for his depression by his primary care physician. He also stated he was prescribed medication for anxiety but he could not afford it. He had not received professional mental health treatment since 1997. The claimant reported he got his children ready for school, watched television, walked to the library sometimes, helped his children with their homework, cleaned, washed dishes, washed clothes, did minor household repairs, and prepared meals. The claimant was alert, fully oriented, and cooperative with normal eye contact. His thinking was organized and there was no evidence for delusions. Insight and judgment appeared good. Diagnostic impression was generalized anxiety disorder,

major depressive disorder, recurrent, mild, and alcohol dependence, full sustained remission with a Global Assessment of Functioning (GAF) score of 65. Ms. La Vasque and Dr. Vaught indicated the claimant appeared to have the ability to understand and remember simple and complex instructions. He appeared to have the ability to persist on tasks but he may have mild to moderate problems maintaining a consistent work schedule due to mood issues. There was no evidence that he would have trouble interacting appropriately with co-workers and/or supervisors. He appeared to have the ability to recognize and respond appropriately to hazards in the environment. In addition, he appeared to have the cognitive capacity to adapt to changes in environment and job requirements. Exhibit 14F.

Non-examining State Agency psychological consultants, Frank Kupstas, Ph.D., and Jenaan Khaleeli, Psy.D., reviewed the evidence on May 14, 2012 and September 18, 2012, respectively. Dr. Kupstas and Dr. Khaleeli concluded the claimant had no severe mental impairment(s), singly or combined. Dr. Kupstas and Dr. Khaleeli further concluded the claimant had mild restriction in activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of extended decompensation in a work or work-like setting. Exhibits 13F and 15F.

(Tr. 29.)

## III.  Conclusions of Law

### A.  Standard of Review

This court reviews the final decision of the SSA to determine whether substantial evidence supports that agency's findings and whether it applied the correct legal standards. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016). Substantial evidence means "'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports the agency's findings, a court must examine the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th

Cir. 1984)). The agency's decision must stand if substantial evidence supports it, even if the record contains evidence supporting the opposite conclusion. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 473 (6th Cir. 2016) (citation omitted).

Accordingly, this court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Where, however, an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record." *Miller*, 811 F.3d at 833 (quoting *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014)).

## B.  The Five-Step Inquiry

The claimant bears the ultimate burden of establishing entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). The SSA considers a claimant's case under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

1. A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. A claimant who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational

factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart B of the Regulations. Claimants with lesser impairments proceed to step four.

4. A claimant who can perform work that he has done in the past will not be found to be disabled.

5. If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

*Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (citing *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007)); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden through step four of proving the existence and severity of the limitations her impairments cause and the fact that she cannot perform past relevant work; however, at step five, "the burden shifts to the Commissioner to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functioning capacity.'" *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 628 (6th Cir. 2016) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).

The SSA can carry its burden at the fifth step of the evaluation process by relying on the Medical-Vocational Guidelines, also known as "the grids," but only if a nonexertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule. *See Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2); *Wright v. Massanari*, 321 F.3d 611, 615–16 (6th Cir. 2003) ("[W]here the characteristics of the claimant exactly match the characteristics in one of the rules, the grid determines whether significant numbers of other jobs exist for the person or whether that person is disabled."). Otherwise, the grids only function as an "analytical framework" for the disability determination. *Anderson*, 406 F. App'x at 35. Where the grids do not direct a conclusion as to

the claimant's disability, the SSA must rebut the claimant's prima facie case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, typically through a VE's testimony. *Anderson*, 406 F. App'x at 35; *see Wright*, 321 F.3d at 616 (quoting SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983)).

When determining a claimant's residual functional capacity ("RFC") at steps four and five, the SSA must consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499 (6th Cir. 2014) (citing 20 C.F.R. § 404.1545(e)).

### C. Plaintiff's Statement of Errors

Born argues that the ALJ committed reversible error when she: (1) found his mental impairments to be non-severe; (2) failed to properly weigh the evidence related to his physical impairments; and (3) failed to properly evaluate his credibility. (Docket No. 14, at 14–15.)

#### 1. *Mental Impairments*

Born argues that the ALJ erred in finding, at step two of the sequential evaluation, that his mental conditions, depression and anxiety, are "non-severe" impairments. (Docket No. 14, at 19.) The Commissioner argues in response only that the ALJ properly found the plaintiff's mental health conditions to be non-severe. (Doc. No. 15, at 11.)

"[A]n impairment is considered 'severe' unless 'the [claimant's] impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 324 (6th Cir. 2015) (quoting SSR 85-28, 1985 WL 56856, at *3 (1985)). The Sixth Circuit has "observed that the claimant's burden of establishing a 'severe' impairment during the second step of the disability

determination process is a '*de minimis* hurdle.'" *Id.* at 324–25 (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). "Under [this] prevailing *de minimis* view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.* at 325 (quoting *Higgs*, 880 F.2d at 862). When assessing the severity of a claimant's mental impairment, an ALJ's written decision must include findings based upon the "special technique" described in 20 C.F.R. § 404.1520a(b)–(e).

Here, the ALJ did not apply the special technique because she fully accepted the opinions of Ms. La Vasque and Dr. Vaught, the examining psychologists, and of Dr. Kupstas and Dr. Khaleeli, the non-examining consulting psychologists. *See Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013). Born alleges that this was an error because certain evidence in the record supports a finding that his mental impairments are severe. (Docket No. 14, at 19–21.)

Even assuming this is true, however, any such error would be harmless, so long as the ALJ also took into consideration all of the plaintiff's impairments, severe and non-severe, in formulating his RFC. As explained by the Sixth Circuit,

> [a]n ALJ's failure to find a severe impairment where one exists may not constitute reversible error where the ALJ determines that a claimant has at least one other severe impairment and continues with the remaining steps of the disability evaluation. This rule is predicated on the notion that the ALJ 'properly could consider claimant's [non-severe impairments] in determining whether claimant retained sufficient residual functional capacity to allow [him] to perform substantial gainful activity.'

*Winn*, 615 F. App'x at 326 (citation omitted); *see also Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (holding that an ALJ's failure to find an impairment severe at step two is not reversible error if the ALJ "considers all of a claimant's impairments in the remaining steps of the disability determination"); 20 C.F.R. § 404.1523 (stating that when making a disability determination, the Regulations require that if one severe impairment exists, the Commissioner

"will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity").

In this case, despite concluding that Born does not have a severe mental impairment at step two of the sequential evaluation process, the ALJ determined that Born suffers from several severe physical impairments. Having determined that he suffers from such impairments, the ALJ continued to step four of the evaluation process before concluding that Born is not disabled. In assessing Born's RFC, the ALJ did not include any work-related limitations specifically associated with his mental impairments. (Tr. 30, 36.) However, in reviewing the evidence to support her RFC assessment, the ALJ summarized the evidence in the record, referenced the plaintiff's inability "to sleep at night due to panic attacks" (Tr. 33), the fact that he was prescribed Xanax, and the plaintiff's own testimony that he "experience[s] mood swings and [goes] from one mood to the other. He stated he [goes] from depressed to anxiety to anger in a short period. He state it [is] almost uncontrollable . . . even with medication. . . ." (Tr. 34.) She stated that she had considered all of this evidence and concluded that "the preponderance of the evidence and objective medical findings support the claimant's residual functional capacity." (Tr. 36.) In addition, the ALJ further indicated that she considered Born's mental impairments in her conclusion that he can perform past relevant work as an IT consultant and supervisor, when she stated that she "compar[ed] [Born's] residual functional capacity with the physical and *mental* demands of the [past relevant work]." (Tr. 36 (emphasis added).)

Although the court may not have reached the same decision, given the *de minimis* threshold for showing a severe impairment at step two, the court cannot conclude that the failure to find that the plaintiff has severe mental impairments constitutes reversible error. The ALJ found that Born suffers from other severe impairments, continued to the next step in the five-step

sequential process, and considered all of his impairments, including his mental impairments, in the remaining steps. Therefore, any such error was harmless. *See Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190–91 (6th Cir. 2009) ("[A] finding of severity as to even one impairment clears the claimant of step two of the analysis and should cause the ALJ to consider both the severe and non-severe impairments in the remaining steps.").

### 2. *Treating Physician Rule*

Born also argues that the ALJ failed to properly weigh the medical evidence related to his physical impairments; more specifically, he contends that the ALJ did not adequately weigh the opinion of his treating physician, Dr. Bain.

An ALJ must give a treating source's opinion controlling weight "if he finds the opinion 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(c)(2)). Even if the treating physician's opinion is inconsistent with other substantial evidence in the record, the treating physician's opinion is still entitled to deference and must be weighed using the following factors: (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; and (5) the specialization of the treating source. *Id.*

The regulations require the ALJ to give "good reasons" for the weight accorded a treating source's opinion. 20 C.F.R. § 404.1527(c)(2). Accordingly, a decision denying benefits

> must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); *see also Wilson*, 378 F .3d at 546

(remanding the case due to the ALJ's failure to follow these guidelines). This procedural safeguard "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544.

The Sixth Circuit has held that ALJs should not give a treating source's opinion less than controlling weight solely because another medical source reaches a conflicting conclusion. *See Hensley v. Astrue*, 573 F.3d 263, 266–67 (6th Cir. 2009) (remanding the case because the ALJ "made his own medical evaluation [by] reaching a conclusion that lay between the two conflicting absolute views of the physicians"). Social security disability cases often involve conflicting medical assessments. *Id.* If ALJs were allowed to disregard treating source opinions every time another source presented contrary conclusions, "it would be a rare case indeed in which [controlling] weight would be accorded." *Id.* Similarly, an ALJ's non-compliance with the treating physician rule cannot be excused just because his decision is otherwise supported by substantial evidence in the record. *Wilson*, 378 F.3d at 546. "[T]o recognize substantial evidence as a defense to non-compliance with § 1527(c)(2) would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory." *Id.*

Here, the ALJ stated that she "[gave] little weight to the opinion of Dr. Bain because her assessment [was] not supported by the mild objective medical findings and it [was] not consistent with her examination findings or the records as a whole." (Tr. 35.) This pronouncement is entirely insufficient to satisfy the requirements of § 1527(c) and Sixth Circuit precedent. The Sixth Circuit has repeatedly held that an ALJ's broad assertion that the opinion of a treating physician is not supported by the record is inadequate; rather, the ALJ must give *specific* good reasons for rejecting the opinion. *See, e.g.*, *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 245–46 (6th Cir. 2007) (reversing and remanding for further consideration, in part

because the ALJ "failed to provide sufficient justification for the weight given to the opinions of [the plaintiff's] treating physicians," as a result of which "his decision in this regard did not meet the requirements of 20 C.F.R. § 416.927, and therefore cannot serve as substantial evidence"). The ALJ's succinctly stated reasons do not permit meaningful review of her application of the treating physician rule. For instance, while she concluded that Dr. Bain's opinion was "not supported by the mild objective findings," the opinion does not provide a single example or refer to any specific medical finding. (Tr. 35.) In fact, it is not even clear whether the ALJ was referring to Dr. Bain's opinion on Born's physical and mental impairments or just his physical impairments. The court further observes that the ALJ did not provide an explicit analysis of the § 1527(c)(2) factors discussed above—such as length of the treatment relationship, nature and extent of the treatment relationship, and specialization—in connection with her decision to reject Dr. Bain's recommendation.[3]

The Commissioner argues that the ALJ properly discounted Dr. Bain's opinion and offers examples of inconsistencies between Dr. Bain's opinion and the record as justification. However, the court "may not accept appellate counsel's post hoc rationalizations for agency action. It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Berryhill v. Shalala*, 4 F.3d 993 (Table), 1993 WL 361792, at *6 (6th Cir. Sept. 16, 1993) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50, 103 (1983)). "Courts are not at liberty to speculate on the basis of an administrative agency's order. . . . The court is not free to accept appellate counsel's post hoc rationalization for agency action in lieu of reasons and findings enunciated by the Board." *Hyatt Corp. v. N.L.R.B.*, 939

---

[3] The court does recognize that "[a]n ALJ need not discuss every piece of evidence in the record for his decision to stand." *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). The ALJ's decision, however, does not reflect that she considered any of the requisite factors.

F.2d 361, 367 (6th Cir. 1991) (internal quotation marks and citation omitted). Thus, the Commissioner's post hoc rationalizations are not an acceptable substitute for a properly supported agency determination.

The court recognizes that the record may contain evidence that otherwise supports the ALJ's decision. Nevertheless, the ALJ is required to follow the procedures set forth in the SSA regulations so that the court may ascertain whether the ALJ's decision is, in fact, supported by substantial evidence. The court finds that the ALJ failed to sufficiently explain the reasons for giving Born's treating physician's opinion little weight. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

Because the ALJ failed to follow procedural regulations designed to protect Born, the court does not find this procedural failure to be a harmless error. Consequently, reversal of the decision is required. *See McLean v. Comm'r of Soc. Sec.*, 360 F. Supp. 2d 864, 872 (E.D. Mich. 2005) ("The error is not harmless when the reviewing court is hampered by the lack of explanation and the rejected evidence could very well establish disability, as here." (citing *Wilson*, 378 F.3d at 547–48)).

The court further finds that it is not necessary, at this juncture, to address Born's third argument, that the ALJ improperly assessed his credibility, because the ALJ's reconsideration of this matter on remand may impact the remainder of the ALJ's sequential analysis, including the assessment of Born's credibility. *See Trent v. Astrue*, No. 1:09-cv-2680, 2011WL 841538, at *7 (N.D. Ohio Mar. 8, 2011). In any event, regardless of whether that assignment of error has merit,

the result would be the same: remand for further proceedings rather than outright reversal and an award of benefits. *See Mays v. Comm'r of Soc. Sec.*, No. 1:14-cv-647, 2015 WL 4755203, at *13 (S.D. Ohio Aug. 11, 2015) (Report and Recommendation), *adopted*, 2015 WL 5162479 (S.D. Ohio Sept. 3, 2015).

## IV.    Conclusion

For the reasons stated above, the plaintiff's Motion for Judgment on the Administrative Record (Docket No. 13) will be granted, and the case will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum.

An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge